**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd
James V. Drew
Lauren Tauro

*Counsel for the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| AMERICA ALTERNATIVE INVESTMENTS INC., | : | Case No. 15-_____(____) |
|     Debtor in a Foreign Proceeding. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| OPTIMA ABSOLUTE RETURN FUND LTD., | : | Case No. 15-_____(____) |
|     Debtor in a Foreign Proceeding. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| RICHCOURT ALLWEATHER B INC., | : | Case No. 15-_____(____) |
|     Debtor in a Foreign Proceeding. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| RICHCOURT ALLWEATHER FUND INC., | : | Case No. 15-_____(____) |
|     Debtor in a Foreign Proceeding. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| RICHCOURT COMPOSITE INC., | : | Case No. 15-_____(____) |
|     Debtor in a Foreign Proceeding. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| RICHCOURT EURO STRATEGIES INC., | : | Case No. 15-_____(____) |
|     Debtor in a Foreign Proceeding. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>**DECLARATION OF SANDIE CORBETT**</u>

I, Sandie Corbett, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1.      I am the Managing Partner of Walkers, Attorneys-at-Law, in the British Virgin Islands (the "BVI").   I am BVI counsel to John D. Ayres and Matthew Wright, as joint liquidators (together, the "Petitioners") of America Alternative Investments Inc., Optima Absolute Return Fund Ltd., Richcourt Allweather B Inc., Richcourt Allweather Fund Inc., Richcourt Composite Inc., and Richcourt Euro Strategies Inc. (collectively, the "Funds"), with respect to the BVI Proceedings (as defined below) and generally on issues related to BVI law, including the BVI Insolvency Act 2003 (the "BVI Act").

2.      I submit this declaration in support of the form petitions and accompanying verified petitions filed under chapter 15 of title 11 of the United States Code, as amended (the "Bankruptcy Code") by the Petitioners, the duly authorised foreign representatives of the Funds, seeking recognition of the Funds' liquidation proceedings in the BVI (the "BVI Proceedings") pending before the Commercial Division of the High Court of Justice, British Virgin Islands, Eastern Caribbean Supreme Court (the "BVI Court").

3.      This declaration is comprised of both statements of legal opinion and statements of fact.   Where the matters stated in this declaration are statements of legal opinion, such statements represent my view of BVI law as a practicing lawyer.

4.      Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true.   Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by or on behalf of the Petitioners and are true to the best of my knowledge, information, and belief.

22632424

I.    **Professional Background**

5.    Walkers is one of the leading offshore law firms and has an international reputation in the fields of corporate and international finance law, with an emphasis on capital markets and structured finance, hedge funds, and private equity.  Accordingly, Walkers has experience in all types of international and cross-border transactions.  In such practice, the firm provides practical advice based upon an in-depth knowledge of the legal regulatory and commercial environment in the BVI and the Cayman Islands.

6.    Walkers also has a substantial litigation practice, which involves a significant proportion of insolvency and restructuring work, including advising liquidators in the BVI and the Cayman Islands.  I have been instructed in connection with a number of important cross-border insolvencies, including Fruit of the Loom, Enron, Parmalat, Sphinx, Refco, and Basis Yield Alpha Fund.  These liquidations required me to become involved in bankruptcy proceedings in the United States, particularly chapter 11 and chapter 15 proceedings.

7.    I was called to the Bar of England and Wales on July 28, 1988, and I commenced practice as a barrister on April 1, 1989.  I practiced at the Chancery Bar from 1989 until August 2001.

8.    I was first admitted to practice as an Attorney-at-Law in the Cayman Islands in January 1995.  I was employed by Walkers in the Cayman Islands in 1995.  I moved permanently to the Cayman Islands in August 2001 and have been employed by Walkers since that time.  As an Attorney-at-Law in the Cayman Islands, I regularly appear before the Grand Court of the Cayman Islands and occasionally appear in the Cayman Islands Court of Appeal.

9.    I was admitted to practice as a barrister of the Eastern Caribbean Supreme Court, BVI in 2004.  I have practiced BVI law since that time.  In February 2009, I became the Head of the Commercial Litigation Group and the Insolvency and Restructuring Group in Walkers' office

3

in the BVI.  I took over as Managing Partner of the BVI office in October 2009.  Since 2004, I have appeared before the BVI Court on a regular basis.

10.     I am also admitted to practice in Anguilla and have advised in connection with the winding up of a prominent resort in Anguilla and have appeared in Court in Anguilla in the insolvency proceedings relating to that resort.

11.     My offshore litigation practice is focused on insolvency and restructuring. However, I also undertake a substantial amount of trust dispute resolution, general commercial litigation, and corporate advisory work.

12.     Walkers has been engaged by the Petitioners as counsel to advise on issues regarding BVI law in connection with the liquidation of the Funds.  Walkers also represents the Petitioners at hearings before the BVI Court.

## II.     The BVI Proceedings:  Procedural Background

13.     As stated above, I am familiar with the BVI Proceedings and the BVI law governing those proceedings.

14.     The Funds are all incorporated in the BVI and are registered as companies under section (6)(a) of the BVI Business Companies Act 2004.

15.     Prior to the BVI Proceedings, the Funds carried on business as open-ended investment companies.  Specifically, the Funds operated as investment funds where investors, including independent third parties, invested in the Funds by subscribing for participating shares offered by the Funds (the "Subscription Agreements").  The participating shares represented the investors' economic interests in the Funds.  In turn, the Funds were to invest the money they received from the Subscription Agreements in accordance with their stated investment strategies as described in confidential information memoranda (the "CIMs") issued by the Funds. According to the CIMs, which included Subscription Agreements as Exhibits, the Subscription

4

Agreements were governed by and were to be construed in accordance with BVI law. Additionally, the Funds' CIMs stated that the Funds operated under the laws of the BVI.

16.    On June 6, 2014, the Funds filed with the BVI Court (i) an ex-parte application seeking the appointment of John D. Ayres and David Walker as joint provisional liquidators of the Funds and (ii) an application seeking the appointment of John D. Ayres and David Walker as joint liquidators of the Funds.

17.    On July 2, 2014, the BVI Court made an order appointing John D. Ayres and David Walker as joint provisional liquidators of the Funds, and on July 21, 2014, the BVI Court made an order appointing the Petitioners as joint liquidators of the Funds (the "BVI Court Orders").[1]

18.    Under paragraph 4(d) of the BVI Court Orders, the Petitioners have the power to "[c]ommence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the [Funds]."  This power, however, may only be exercised with the sanction of the BVI Court.  Accordingly, on July 28, 2015, the Petitioners filed with the BVI Court an application for sanction to commence the Funds' chapter 15 cases seeking recognition of the BVI Proceedings.  The BVI Court approved such application by order made on August 6, 2015 (the "Chapter 15 Sanction Order").

## III.    The Law Governing the BVI Proceedings

19.    As set out above, the BVI Proceedings were commenced pursuant to the BVI Act. This is the law governing corporate insolvencies in the BVI.  The enacting legislation describes the BVI Act as "[a]n Act to reform the law relating to the insolvency of companies and foreign companies . . . and to provide, in particular, for a mechanism for insolvent persons to enter into

---

[1]    At the request of a significant stakeholder, given the perceived efficiencies arising from his appointment as a joint official liquidator of certain other funds formerly controlled by Fletcher in their liquidation proceedings in the Cayman Islands, Matthew Wright was appointed as a joint liquidator of the Funds in place of David Walker.

22632424

arrangements with their creditors, an administration procedure for companies, the receivership of companies and foreign companies, the liquidation of companies . . . ." *See* Enacting Statement of the BVI Act, attached hereto as <u>Exhibit A</u>.

20.    Key insolvency procedures provided for in the BVI Act include liquidation, creditor arrangement, receivership, and administrative receivership.  As a general statement, the BVI Act contains provisions broadly similar to those contained in the insolvency laws of England, and I understand from the advice given to the Petitioners by their United States counsel that the Petitioners' powers are broadly comparable to those of a trustee under chapter 7 of the Bankruptcy Code.

21.    Under section 184 of the BVI Act, attached hereto as <u>Exhibit B</u>, court appointed liquidators act as officers of the BVI Court and are required to take possession of, protect, and realise the assets of the company in liquidation, wherever they may be located, for the benefit of its unsecured creditors.  Additionally, pursuant to section 175 of the BVI Act, attached hereto as <u>Exhibit C</u>, upon their appointment, the Petitioners, effectively, stepped into the shoes of the Funds' previous director as the director's agency is terminated by the appointment.

22.    The BVI Proceedings are not for the benefit of any single creditor.  Rather, they operate to resolve and determine the rights of all claimants and stakeholders vis-à-vis the Funds. Specifically, section 207 of the BVI Act, attached hereto as <u>Exhibit D</u>, provides for the payment of classes of admitted claims and expenses in accordance with statutory priorities, and if the amount available for such claims is insufficient to pay claims in full, dividends are paid ratably by class.  Any person or entity with a claim against the Funds may prove such claim in the Funds' liquidation.  Any such claim, subject to appropriate proof, may be allowed, thereby entitling such claimant to ratable payment of its claim from assets of the Funds, if any, subject to claims of higher statutory priority.

22632424

23.     The BVI Court Orders state that the Petitioners "shall have the powers necessary to carry out the functions and duties of a liquidator" under the BVI Act, in the BVI or elsewhere, including the powers to:

(a)     Pay any class of creditors in full.

(b)     Make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the [Funds], whether present or future, certain or contingent, ascertained or not.

(c)     Compromise, on such terms as may be agreed:

i.   calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the [Funds] and any person; and

ii.  questions in any way relating to or affecting the assets or the liquidation of the [Funds];

and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

(d)     Commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the [Funds].

(e)     Carry on the business of the [Funds] so far as may be necessary for [their] beneficial liquidation.

(f)     Sell or otherwise dispose of property of the [Funds].

(g)     Do all acts and execute, in the name and on behalf of the [Funds], any deeds, receipts or other documents.

(h)     Use the [Funds'] seal[s].

(i)     Prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and ratably with the other separate creditors.

(j)     Draw, accept, make and endorse any bill of exchange or promissory note in the name[s] and on behalf of the [Funds] with the same effect with respect to the [Funds'] liability as if the bill or note had been drawn,

accepted, made or endorsed by or on behalf of the [Funds] in the course of [their] business.

(k)     Borrow money, whether on the security of the assets of the [Funds] or otherwise.

(l)     Take out in their official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the [Funds].

(m)     Call meetings of creditors or members for:

    i.  the purpose of informing creditors or members concerning the progress of matters arising in the liquidation[s];

    ii.  the purpose of ascertaining the views of the creditors or members on any matter arising in the liquidation[s]; or

    iii.  such other purpose connected with the liquidation[s] as the [Petitioners] consider fit.

(n)     Appoint solicitors, accountants or other professionally qualified persons to assist the [Petitioners] in the performance of their duties.

(o)     Appoint an agent to do any business that the [Petitioners] are unable to do themselves, or which can be more conveniently done by an agent.

24.     Pursuant to paragraph 5 of the BVI Court Orders, the first four powers of the Petitioners set forth above are exercisable only with BVI Court approval.  The remaining powers of the Petitioners are exercisable without specific, prior BVI Court approval.

25.     In my experience, liquidation proceedings in the BVI are fair and equitable.

## IV.     The BVI Proceedings are "Foreign Proceedings" within the Meaning of Section 101(23) of the Bankruptcy Code

26.     I understand that the term "foreign proceeding," is defined in section 101(23) of the Bankruptcy Code, as "a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Company are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).

8

27.     On the basis of that definition it would appear to me that the BVI Proceedings qualify as "foreign proceedings."  They are judicial proceedings in which the assets and affairs of a company are subject to control or supervision by the BVI Court, in which the rights of creditors and stakeholders will be determined together pursuant to the BVI Act, a law relating to the insolvency and winding-up of companies.

### V.      Each Petitioner is a "Foreign Representative" within the Meaning of Section 101(24) of the Bankruptcy Code

28.     I further understand that the term "foreign representative," is defined in section 101(24) of the Bankruptcy Code, as "[a] person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).

29.     On the basis of that definition it would appear to me that the Petitioners qualify as "foreign representatives."  The Petitioners are duly authorised and empowered by the BVI Court by reason of the BVI Court Orders and the Chapter 15 Sanction Order to administer the liquidation of the Funds' assets and affairs, as well as to act as duly authorised representatives of the BVI Proceedings.

### VI.     The BVI Proceedings are "Foreign Main Proceedings"

30.     I also understand that, for a foreign proceeding to be classified as a "foreign main proceeding" under section 1517(b)(1) of the Bankruptcy Code, the foreign proceeding must be "pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1517(b)(1)-(2).

31.     I have been advised by the Petitioners' United States counsel that certain provisions of BVI law are relevant to the determination of where the Funds' center of main interests ("COMI") is under section 1517 of the Bankruptcy Code.

22632424

32.    As an initial matter, each Fund was incorporated in the BVI and registered as a company under section 6(a) of the BVI Business Companies Act 2004.

33.    The Funds were incorporated on the following dates:

(a)    America Alternative Investments Inc. – October 19, 1990

(b)    Optima Absolute Return Fund Ltd. – May 27, 2005

(c)    Richcourt Allweather B Inc. – October 31, 1996

(d)    Richcourt Allweather Fund Inc. – October 31, 1996

(e)    Richcourt Composite Inc. – May 24, 2005

(f)    Richcourt Euro Strategies Inc. – February 14, 2000

34.    Each Fund maintains its registered office at 171 Main Street, P.O. Box 92, Road Town, Tortola, VG 1110, BVI, and the registered agent for each Fund is Intertrust Corporate Services (BVI) Limited.  I am advised by the Petitioners' United States counsel that under the law of the United States, these facts support a presumption that the BVI is the Funds' COMI.

35.    The Funds also have assets located in the BVI, including funds in a BVI bank account.

36.    Further, the Petitioners have displaced the Funds' director pursuant to section 175 of the BVI Act as a result of their appointment.  *See* <u>Exhibit C</u>.  The Petitioners are responsible for, among other things, liquidating the assets of the Funds, carrying on the business of the Funds, investigating causes of action that the Funds may possess, and prosecuting and settling or otherwise resolving such causes of action as they deem appropriate.  Accordingly, the Funds are primarily managed by and the Funds' remaining affairs are being conducted by the Petitioners in the BVI.

22632424

## **CONCLUSION**

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on this 11th day of August, 2015.


_____
Sandie Corbett

22632424

**<u>EXHIBIT A</u>**

**VIRGIN ISLANDS**

**INSOLVENCY ACT, 2003**
**No. 5 of 2003**

**VIRGIN  ISLANDS**

**INSOLVENCY  ACT, 2003**

**ARRANGEMENT  OF  SECTIONS**

Section

**PART I**

**PRELIMINARY PROVISIONS**

1.      Short title and commencement.
2.      Interpretation.
3.      Meaning of "company".
4.      Meaning of "subsidiary" and "holding company".
5.      Meaning of "connected person" and "related company".
6.      Meaning of "director".
7.      Meaning of "unlicensed financial services business".
8.      Meaning of "insolvent".
9.      Meaning of "creditor", "secured creditor" etc.
10.     Meaning of "liability".
11.     Admissible claims.
12.     Non-admissible claims.
13.     Meaning of "public document".

**PART II**

**CREDITORS' ARRANGEMENTS**

**Division 1 - Interpretation**

14.     Interpretation for and scope of this Part.
15.     Arrangements.
16.     Remuneration of supervisor and interim supervisor.

**No. 5 of 2003**          **Insolvency Act, 2003**          **Virgin Islands**

**I Assent**
**M. ELTON GEORGES, OBE**
**Acting Governor**
**12th May, 2003**

## VIRGIN ISLANDS

## No. 5 of 2003

An Act to reform the law relating to the insolvency of companies and foreign companies, limited partnerships, partnerships and individuals and to provide, in particular, for a mechanism for insolvent persons to enter into arrangements with their creditors, an administration procedure for companies, the receivership of companies and foreign companies, the liquidation of companies, foreign companies, limited partnerships and partnerships, the making of bankruptcy orders against individuals, the licensing and regulation of insolvency practitioners, the penalization and redress of wrongdoing associated with insolvent persons, the disqualification of directors, the avoidance of certain transactions, cross border insolvency issues and other matters connected therewith.

[*Gazetted*  13th May, 2003]

ENACTED by the Legislature of the Virgin Islands as follows:

**<u>EXHIBIT B</u>**

**VIRGIN ISLANDS**

**INSOLVENCY ACT, 2003**
**No. 5 of 2003**

**VIRGIN  ISLANDS**

**INSOLVENCY  ACT, 2003**

**ARRANGEMENT  OF  SECTIONS**

Section

## PART I

### PRELIMINARY PROVISIONS

1.      Short title and commencement.
2.      Interpretation.
3.      Meaning of "company".
4.      Meaning of "subsidiary" and "holding company".
5.      Meaning of "connected person" and "related company".
6.      Meaning of "director".
7.      Meaning of "unlicensed financial services business".
8.      Meaning of "insolvent".
9.      Meaning of "creditor", "secured creditor" etc.
10.     Meaning of "liability".
11.     Admissible claims.
12.     Non-admissible claims.
13.     Meaning of "public document".

## PART II

### CREDITORS' ARRANGEMENTS

#### Division 1 - Interpretation

14.     Interpretation for and scope of this Part.
15.     Arrangements.
16.     Remuneration of supervisor and interim supervisor.

(b)  he gives notice to the creditors stating

    (i)  that he does not consider it necessary for a meeting to be held,

    (ii)  the reasons for his view, and

    (iii)  that a meeting will not be called unless 10 per cent in value of the  creditors give written notice to the liquidator within ten days of receiving the notice, that they require a meeting to be called; and

(c)  no notice requiring a meeting to be held is received by him.

## LIQUIDATORS

184.  (1)   In performing his functions and undertaking his duties under this Act, a liquidator, whether appointed by resolution of the members or by the Court, acts as an officer of the Court.

    (2)   A liquidator is the agent of the company in liquidation.

*Status of liquidator.*

185.  (1)   The principal duties of a liquidator of a company are

(a)  to take possession of, protect and realise the assets of the company;

(b)  to distribute the assets or the proceeds of realisation of the assets in accordance with this Act; and

(c)  if there are surplus assets remaining, to distribute them, or the proceeds of realisation of the surplus assets, in accordance with this Act;

*General duties of liquidator.*

    (2)   The liquidator shall, subject to this Act and the Rules, use his own discretion in undertaking his duties.

    (3)   A liquidator also has the other duties imposed by this Act and the Rules and such duties as may be imposed by the Court.

186.  (1)   A liquidator of a company has the powers necessary to carry out the functions and duties of a liquidator under this Act and the powers conferred on him by this Act.

*General powers of liquidator.*

**EXHIBIT C**

**VIRGIN ISLANDS**

**INSOLVENCY ACT, 2003**
**No. 5 of 2003**

**VIRGIN  ISLANDS**

**INSOLVENCY  ACT, 2003**

**ARRANGEMENT  OF  SECTIONS**

Section

**PART I**

**PRELIMINARY PROVISIONS**

1.      Short title and commencement.
2.      Interpretation.
3.      Meaning of "company".
4.      Meaning of "subsidiary" and "holding company".
5.      Meaning of "connected person" and "related company".
6.      Meaning of "director".
7.      Meaning of "unlicensed financial services business".
8.      Meaning of "insolvent".
9.      Meaning of "creditor", "secured creditor" etc.
10.     Meaning of "liability".
11.     Admissible claims.
12.     Non-admissible claims.
13.     Meaning of "public document".

**PART II**

**CREDITORS' ARRANGEMENTS**

**Division 1 - Interpretation**

14.     Interpretation for and scope of this Part.
15.     Arrangements.
16.     Remuneration of supervisor and interim supervisor.

## EFFECT OF LIQUIDATION

Effect of
liquidation.

175. (1)   Subject to subsection (2), with effect from the commencement of the liquidation of a company

(a)   the liquidator has custody and control of the assets of the company;

(b)   the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under this Part;

(c)   unless the Court otherwise orders, no person may

(i)   commence or proceed with any action or proceeding against the company or in relation to its assets, or

(ii)   exercise or enforce, or continue to exercise or enforce any right or remedy over or against assets of the company;

(d)   unless the Court otherwise orders, no share in the company may be transferred;

(e)   no alteration may be made in the status of or to the rights or liabilities of a member, whether by an amendment of the memorandum or articles or otherwise;

(f)   no member may exercise any power under the memorandum or articles, or otherwise, except for the purposes of this Act; and

(g)   no amendment may be made to the memorandum or articles of the company.

(2)   Subsection (1) does not affect the right of a secured creditor to take possession of and realise or otherwise deal with assets of the company over which that creditor has a security interest.

(3)   Any thing or matter done or purported to be done in contravention of subsection (1) is void and of no effect.

Restriction on
execution or
attachment.

176. (1)   Subject to subsections (2) and (3), a creditor is not entitled to retain the benefit of any execution process, distress or attachment over or against the assets of a company in liquidation unless the execution, process or attachment is completed before the first occurring of the commencement of the liquidation and,

**EXHIBIT D**

**VIRGIN ISLANDS**

**INSOLVENCY ACT, 2003**
**No. 5 of 2003**

**VIRGIN  ISLANDS**

**INSOLVENCY  ACT, 2003**

**ARRANGEMENT  OF  SECTIONS**

Section

**PART I**

**PRELIMINARY PROVISIONS**

1.      Short title and commencement.
2.      Interpretation.
3.      Meaning of "company".
4.      Meaning of "subsidiary" and "holding company".
5.      Meaning of "connected person" and "related company".
6.      Meaning of "director".
7.      Meaning of "unlicensed financial services business".
8.      Meaning of "insolvent".
9.      Meaning of "creditor", "secured creditor" etc.
10.     Meaning of "liability".
11.     Admissible claims.
12.     Non-admissible claims.
13.     Meaning of "public document".

**PART II**

**CREDITORS' ARRANGEMENTS**

**Division 1 - Interpretation**

14.     Interpretation for and scope of this Part.
15.     Arrangements.
16.     Remuneration of supervisor and interim supervisor.

(2)   On an application under subsection (1), the Court may order a member or past member to pay to the company any money due from him, or due from the estate of the person who he represents in accordance with section 204(1).

(3)   In the case of any company, whether limited or unlimited, when all the creditors are paid in full, together with interest at the official rate, any money due on any account whatever to a member from the company may be allowed to him by way of set-off against any subsequent call.

206.  An order made against a member under section 205 is, subject to any right of appeal, conclusive evidence that the money, if any, ordered to be paid is due.

*Order under section 205 to be conclusive evidence.*

## CLAIMS

207.  (1)   Unless and to the extent that this Act or any other enactment provides otherwise, the assets of a company in liquidation shall be applied

*Distribution of assets of company.*

(a)   in paying, in priority to all other claims, the costs and expenses properly incurred in the liquidation in accordance with the prescribed priority;

(b)   after payment of the costs and expenses of the liquidation, in paying the preferential claims admitted by the liquidator in accordance with the provisions for the payment of preferential claims prescribed;

(c)   after payment of the preferential claims, in paying all other claims admitted by the liquidator; and

(d)   after paying all admitted claims, in paying any interest payable under section 215.

(2)   Subject to section 151, the claims referred to in subsection (1)(c) rank equally between themselves if the assets of the company are insufficient to meet the claims in full, they shall be paid rateably.

(3)   Any surplus assets remaining after payment of the costs, expenses and claims referred to in subsection (1) shall be distributed to the members in accordance with their rights and interests in the company.

(4)   For the purposes of this Act, assets held by a company in liquidation on trust for another person are not assets of the company.

208.  (1)   So far as the assets of a company in liquidation available for payment of the claims of unsecured creditors are insufficient to pay

*Claims having priority over floating charges.*